The first case this morning is case number 4-16-0037, People v. Taiwan Anderson. Appearing for the appellant is attorney Eric Castaneda and for the appellee is attorney Allison Paige Brooks. Good morning. Mr. Castaneda, are you ready to proceed? Good morning, Your Honor. Counsel, my name is Eric Castaneda. I'm with the Office of the State Appellate Defender on behalf of Taiwan Anderson, the appellant. Your Honors, this morning I will be focusing my arguments on three of the issues raised within the briefs. That would be Issues 1, where we are raising a sufficiency of the evidence argument as to the lack of evidence presented by the state to establish possession of the gun charges. Issues 3, where we are arguing prosecutorial misconduct based on certain improper remarks made by the state's attorney during her closing arguments. And Issue 4, where we are raising an as-applied constitutional challenge to the armed violence minimum sentencing statute. I will be happy to answer any questions Your Honors may have on any of the other issues raised within the briefs. Your Honors, here the state did not present sufficient evidence to establish possession. There was none of the police officers who arrested Taiwan ever saw him possess a handgun. They never saw him attempt to discard a handgun. And they never saw a handgun fall from his purse. Although there were fingerprints analysis conducted, the fingerprint analysis were insufficient to not link Mr. Anderson to the handgun. Although there were DNA swabs collected from Mr. Anderson, there was no DNA evidence presented connecting Taiwan to the handgun. Where did the gun come from? Your Honor, there was insufficient evidence to establish where the gun came from. This was a high-crime neighborhood with a large amount of recent shootings, and the yard was accessible to the public in this high-crime neighborhood. So there was insufficient evidence to establish where this gun came from. That doesn't answer my question. The gun had to come from someplace. What's your speculation on where it came from? I think the answer to that question, Your Honor, is that the state failed to prove where that gun came from. It certainly didn't come from Taiwan. And based on that, it's insufficient to establish that he did possess that handgun. So where the handgun came from was… So he's just the old unluckiest man in the world. He happened to trip when he was running from the cops, and within two feet of where he tripped, there's his gun. Bad luck. Your Honor, in People v. Wright, there… Is that your explanation, it was just bad luck? The explanation is that it wasn't… Based on the evidence presented by the state, it wasn't established that it was his gun, that he possessed that gun. Are you disputing there was a gun in the ground two feet from him? Absolutely not, Your Honor. So there's a gun there, and he happened to trip, and it's just bad luck that the gun is two feet from him where he just happened to trip while running from the cops. That's the explanation? It may be, Your Honor. This was a high-crime neighborhood. Well, you know, either the gun was his, or he tripped, and he had the bad luck to fall where someone else had left the gun who was not connected with this case. Is there a third option? No, Your Honor. Well, then it was bad luck. Yes, it would be bad luck to land here near this gun. Now, the jury was instructed that, among other things, they should consider their common experiences in life, weren't they? Correct, Your Honor. That's the standard IPI instruction? Yes, Your Honor. Okay. And is one of those things they consider the likelihood of guns being left in areas just on the ground on the street? As you walk around, do you see many guns in the street, folks, or in a grassy area? Given the circumstances here, no, Your Honor. That wouldn't be common knowledge, which goes to issue. Common experience. Common experience, Your Honor, which goes to issue three, raised in the briefs, where the state's attorney, during her closing arguments, and that's a fully preserved issue, commented directly to the determinative issue here of whether Taiwan possessed a handgun and said, in order for you to believe that Taiwan did not possess this handgun, you would have to believe that this gun was left in the back of this yard. People do not leave their handguns lying in the back of yards. Why is that improper? Let's just take – so you have the circumstances of this case, but I'll describe another scenario. Instead of running through a backyard, they're running through a farm field, and he trips and falls, and he's apprehended, and they find a handgun two or three feet away from him. You're saying that the state's attorney couldn't argue to the jury exactly what the state's attorney argued here? I think the circumstances of being in a farm are different than being in a high-crime neighborhood with a large amount of recent shootings. Well, the logic of your argument, it would seem to me, would be the same, would have to be the same in both, because you're asking the jury to consider the circumstances and their common experience in regards to handguns being left on the ground, whether it's in a farm field or in a yard. Well, just to take the scenario you presented, Your Honor, if it was left in a farm, then there, the state wouldn't be able to comment on it under those circumstances. Either we don't know who owns this farm or whether they had guns in the farm and whether they were commonly left within the farm. So there would have to be evidence of that before the state's attorney could argue that? The state doesn't have to present that evidence, but if they choose not to, then it's insufficient to establish exclusive and immediate control of that handgun. Why can't the state argue that the jury's entitled to draw reasonable inferences? The state can argue that, but – Reasonable inference for the jury to draw that since – I'm still waiting for the third option. Apparently, I haven't got one. There are only two options to account for this gun. Either it was the defendant who carried it and when he dropped it to the ground, he lost his possession of it. That's why it's within two feet of him. Or it's just bad luck that some unknown third party happened to, for reasons unknown – that's the other thing. Guns have value. Some unknown third party decided, or maybe mislaid it, who knows, to place this gun in the spot where this unluckiest man in the world happened to trip. You're saying it's prosecutorial misconduct for the state to argue the first inference from the circumstances that it came from the defendant because the second one really doesn't make much sense. Is that your convention? Yes, Your Honor. Here, the state was unable to prove exclusive – No, we're talking about the – what reasonable inferences can the jury be asked to draw? Why isn't this a reasonable inference for the jury to be asked to draw? Because there was no evidence – this wasn't – the jury doesn't have common knowledge or common experience of how often guns are left lying in the back of yards in high crime neighborhoods. Counsel, the statement that you quote in your brief isn't a statement. It's a question to the jury. Do people leave loaded handguns laying in plain view in a yard? The state didn't posit that that was a fact. They asked the question of the jury. And doesn't the fact that it's a question imply that the state is essentially asking them to use their own common sense and experiences in life, another instruction they get, as well as looking at the circumstantial evidence of the case, another instruction that they'll get. So they didn't make a statement. They asked a question. Your Honor, respectfully, the state's attorney did go on to – she did make the statements that Your Honor just stated. However, the record on volume 9, page 29, she goes on to say, no, people do not leave loaded handguns laying in plain view in a yard. This is a direct statement. But what you question in your brief is only the first part. Well, again, I failed to include that in the brief, Your Honors, but the next sentence that the state's attorney does tell the jury or comments to the jury is she does make a statement that says, no, people do not leave loaded handguns lying in the back of the yard. So put it into context. Isn't that simply asking the jurors to use their own common sense experiences in life, take into consideration what may be reasonable under the circumstances, and consider all of the other circumstantial evidence that the state has presented to them? No, Your Honor. Given the circumstances here where they have to establish exclusive and immediate control of the area where the handgun is found, and the only evidence here is essentially that a handgun is found two to three feet from Taiwan. He never possessed it. He continuously denied any knowledge of the gun. And when it goes to the determinative issue of the case of whether he possessed the gun, no, Your Honor. In People v. Jackson, there the state's attorney made a comment as to the determinative issue there, which was whether the defendant had knowledge of the gun during her closing arguments. And because it went to a determinative issue of the case of knowledge, as the comments of the state's attorney did here, it substantially prejudiced Taiwan. And for those reasons, he should be afforded a new trial. Counsel, in regards to possession again, it doesn't seem that there is a case that you found that would directly support your argument here. The closest it looked like you got to was People v. Wright. But in People v. Wright, you have the defendant and another individual falling down a flight of stairs, lying in a pile at the bottom when they're found by the police. And there are three other individuals in this basement area, and the gun's found nearby. So you have five individuals who could conceivably have been the possessor of the gun. But here you only have the defendant, right? There's no one else around. Correct, Your Honor. These are different circumstances than in Wright. In Wright, the defendant fell on top of the gun, or a gun was found in his torso, inches from his hands. Here we have the gun found two to three feet from Taiwan. And while we don't have other individuals, as was the case in Wright, we have this evidence that was presented by the state that this was a high-crime neighborhood, and certainly Taiwan did not have exclusive and immediate control of this backyard that was open, accessible to the public, where there had been a large amount of recent shootings. So it is different in Wright, but there's still that the state was still not able to prove that exclusive and immediate control of the area where that gun was found. And none of the police officers ever saw Taiwan possess the gun. They never saw a drop from this person. Taiwan denied any knowledge of the handgun. But the officer said they saw him running away with his hands tucked in his waistband as he was running, not a typical form or way of running, right? I mean, that's very unusual. Now, Your Honor, Officer Rosenberry did testify that he was not running normally, and that testimony was stricken by the trial court. The testimony that did remain was that he was running with his hands in front of his waistband. Now, we do know that evidence did show that Taiwan did possess a cell phone, and he did possess drugs on this person, and those were recovered from his shorts. So they're the pockets. From his short pockets, correct, the drugs. But he's observed hanging on to the front of his shorts as he's running. He's observed with his hands in front of his waistband of the shorts, correct. And at no point did the police officers ever know there was a gun or testify that there was a gun on Taiwan? This is after being lit up by the police. He takes off running, even though the police said, police, stop. He continues to run. It's June 24th or 25th. He's wearing shorts, but he's wearing a hoodie that exposes only his face. The hoodie's pulled up and completely tightened around his face, so all you see is the front of his face. It's June 24th now. So they see this guy running, and he's holding the front of his shorts as he runs. And then he trips over a wood pile, and his arms splay out in front of him, and then two to three feet directly in front of that, the handgun is found. You're saying that the jury isn't allowed to consider all of that other circumstantial evidence. They can only look at the fact that he doesn't have a handgun on him and nobody saw it on him. No, they are, Your Honor. They are obviously allowed to consider all the other circumstances. And based on all the evidence and the circumstances presented, that is essentially the only evidence we have here, that a handgun was found two to three feet from where Taiwan fell. And yes, he did run. He did possess cannabis on him. He did have drugs on him. So there is an explanation for his running from the police, who only announced their office as they started to run after Taiwan. And when he's confronted with the fact that he's going to be charged with armed violence, his response wasn't, but I didn't have a gun. His response was, I didn't hurt anybody. Responding to the violence part, not the armed part. So his response wasn't, wait a minute, armed violence, I didn't have a gun. His response was, what do you mean, I didn't hurt anybody. Aren't they allowed to consider that too? Not when it's ambiguous like that, Your Honor. They're not allowed to consider that at all? They can consider it, but it's still a very ambiguous answer, Your Honor. Sure. We don't know whether or not Taiwan has knowledge of what an armed violence charge entails. We don't. And I don't know, hearing violence, I didn't hurt anyone, doesn't establish knowledge or some admission that he could have done it. See, there's a problem. Your argument always goes to whether it establishes something. My question is, it's not a matter of whether each particular element necessarily establishes the ultimate conclusion. The question is, are any or all of these elements relevant to the jury's determination as to what they conclude? And it seems like your argument is, if one element alone doesn't establish it, then that's something they can't consider. I kind of question that. No, Your Honor. Even if the jury is allowed to consider all the circumstances, but based on those circumstances, based on the fact that he was running with a cell phone and he had drugs on his person, based on the circumstances that none of the police officers ever saw him with a gun, this is a high-crime neighborhood with a large amount of recent shootings. Taking all that into consideration and drawing inferences from all those facts, no, the jury, no reasonable person would have found that Taiwan possessed his handgun. And they heard all of that. They heard all of those explanations. Yes. It's a high-crime area. He had a phone. They heard all that. And the jury weighed that as the findings of fact, and they concluded they didn't buy that. Correct, Your Honor. So now we're supposed to decide that the jury who actually heard the evidence, watched the testimony, listened to the witnesses, they got it completely wrong, and we should reverse that. Yes, Your Honor. Based on all the circumstances, the jury did get it wrong here. And for those reasons, the State failed to prove possession of the weapon. Now, as to Issue 3, where the State's attorney improperly remarked facts that were not presented in evidence, Taiwan was substantially prejudiced because they didn't have overwhelming evidence against Taiwan. And that's the people don't leave guns. Yes, Your Honor. And it went to the determinative issue of the case whether he possessed the gun. And the State's evidence mostly relied on Rosenberg's testimony that he was running with his hands in front of his waistband. In People v. Jackson, there the court found that when the State relies their case on one officer's testimony, that is a close case. So an improper remark made during closing arguments prejudiced Taiwan. And he should be afforded a fair trial, a new trial, based on his error. Your Honors, as to Issue 4, where Section 533.8.3 of the armed violence statute violates Taiwan's Eighth Amendment right under the United States Constitution, and it violates his right under the Proportion of Penalties Clause of the Illinois Constitution. Now, here we have the judge lamenting that he was – he had – his hands were tied. He didn't have any say in what the legislature had already determined. At 15-year minimum, was the amount necessary to charge a young, youthful offender like Taiwan, who had only been 18 for less than two weeks. He had been 18 for 12 days. Now, Miller, Roper, and Graham tell us that for purposes of sentencing, youthful – with juveniles are different than adults. They are categorically less culpable than adults. Why are you arguing this to us when he was 18 years old? Under the holding of People v. House, Your Honor, he's still a youthful offender. While he's not a juvenile – What does that mean, a youthful offender? What case was that? People v. House, Your Honor. What court was that? That was their first district. And there, they found that a – the constitutional rights of an 18-year-old – 18-year-old with three months – was violated, applying the logic of Miller. And because he was still a youthful offender – Because of essentially a life sentence. Correct, Your Honor. Which is significantly different than a 15-year sentence – 16 years sentence. Yes, Your Honor. And then this goes to the logic that Miller has proposed. At what point is one no longer a youthful offender, whatever that term means? There's no exact line drawn, Your Honor. So if he were 20, he could still apply? If he were 20, the circumstances would be different, and the court should be allowed to consider those circumstances. And it should be a sentence, these youthful offenders on a case-by-case basis, but not subject to a mandatory minimum that the legislature has already determined. If he were 20, that would be the same rule? Yes, Your Honor. I would still argue that he's still a youthful offender based on the research, based on the case law, that youthful offenders do not stop growing – their brains do not stop developing at the arbitrary age of 18. And here, Taiwan was 18 years old and 12 days. Based on that, you're out of time. Thank you, Your Honors. Thank you. Ms. Brooks. Good morning, Your Honors. I'm Allison Paige Brooks, and I appear on behalf of the people. May I please support? May I please counsel? With respect to a proof beyond a reasonable doubt issue, the defendant essentially is asking for reversal on the ground that the evidence was circumstantial. He posits a reasonable hypothesis of innocence, which is that the gun might have already been on the ground at the point, at the spot where the defendant tripped during the foot pursuit. However, evidence being circumstantial and the existence of a reasonable hypothesis of innocence are not grounds for reversing the judgment. Instead, the proof has to be so unreasonable or unsatisfactory that a reasonable doubt of guilt remains. And when there are reasonable inferences that exist in support of the judgment, then this Court should defer to the trier fact. Here, the reasonable inferences are in support of the jury's verdict. The defendant, by running with arms and hands tucked by the front waistband, supports a reasonable inference that the defendant was doing so in order to maintain control of the gun during the foot pursuit. Whereas the cell phone, which was in the pocket, and the drugs, which would weigh less than a cell phone, are in the pocket. So there would not necessarily be a need for the arms to be in that position while running in order to maintain a cell phone and drugs in the pocket. There are multiple issues in this appeal, and I want to address a couple of the others that we didn't get to with Mr. Castaneda, because we spent a lot of time on the possession and the argument portion of it. But in terms of the possession with intent to deliver conviction, can you explain why it is that there was sufficient evidence, what the evidence was to support the conviction of intent to deliver here? Sure, I understand. Well, the Ellison, or was it the Elliott or Ellison case? The Ellison. So the standard is essentially drugs packaged for sale, and one additional factor indicative of intent to deliver. And, of course, possession of weapon is one of those additional factors. That is the minimum evidentiary threshold. And here I believe there was also a witness who testified as an expert and gave an opinion on the evidence, David Daly, opined that had been possessed with intent to distribute. So we have an expert witness, and we have the drugs that are packaged individually for sale in combination with the inference that the defendant had possessed the firearm that was recovered. Did Daly testify that that was one of the items in support of his opinion, that the defendant possessed a firearm? Well, I'm not sure that that's the case. I know the firearm is an element that's been recognized by reviewing courts. However, Daly also relied on the defendant's lack of paraphernalia on his person, such as crackpipes or blunts or rolling papers for consuming the cannabis or smoking the cocaine. So that's the additional sort of yet another factor that was testified to.  But then the armed violence charge was predicated on unlawful possession of a controlled substance, not unlawful possession of a controlled substance with intent to deliver. So therefore, element of an intent to deliver was not something that had to be proved for armed violence. And, of course, with respect to the second part of the One Act, One Crime, lesser included offense argument, that makes the Smith case distinguishable because there armed violence was an element of intent to deliver. Here it was just simply unlawful possession. And so, therefore, the greater charge of armed violence does not have the element of intent to deliver. And, therefore, the unlawful possession of a controlled substance with intent to deliver, being a lesser offense, is not included and, therefore, not subject to the One Act, One Crime rule. And I said also, even if this court found a reasonable that was the intent to deliver, the armed violence charge would still have to be sustained because intent to deliver the cocaine is not an element of the armed violence charge. With respect to the inferences, this court has to accept all reasonable inferences in favor of the prosecution and has to view the evidence in the light most favorable to the prosecution. And so the defense theory that he could have been running in this manner in order to hold onto a cell phone, that can only be accepted if that's the only reasonable inference that can be drawn from the evidence. And here that's not the only reasonable inference. And so, therefore, this court does not have to accept that inference. Even though the officer's testimony about it being an unusual manner, the objection was sustained, this court can still view that evidence, the defendant running with his hands tucked by the waistband for at least some distance as being an unusual manner. I mean, that's still something that can be argued on appeal as an inference, and also argued as a matter of common knowledge and common experience, rather than having to rely on testimony to establish that this was, in fact, an unusual manner of running. The location of the gun is extremely important because it was right in front of where the defendant tripped, so it was in line with his momentum. But also, this case is distinguishable from cases like Wright because here there's also additional evidence. Well, it's not in a house, it's outside, so the location might matter in terms of the likelihood of a weapon being lying around, especially a loaded weapon. And in this case, the absence of other people around, whereas in Wright, I believe it was two men being pursued in a house. And in here, there's also evidence of tacit admissions, which is very key as well. Because when the police made several questions, the defendant either didn't respond and was silent, which can be considered under the Hart case, because if you're otherwise answering other questions and your silence is not an invocation of your right to remain silent, the fact that you failed to answer certain questions and then provide, like, a non-response, like I wasn't hurting anyone, is something that could be considered as a tacit admission of guilt and that of the question of whether he was armed. So those are important distinguishing facts that provide additional proof here that was not in the Wright case. And also the Anderson case does apply. The defendant possessed a weapon during the flight at a time in which there was a danger. During the confrontation, there was a danger. And the weapon doesn't actually have to be used. It has to be possessed at a time when there was a potential for violence. And here, when the defendant is confronted and flees and possesses the gun during part of that flight, there is sufficient potential for violence to apply the armed violence statute. So a defendant, I think here the argument made some reference as to whether the defendant had exclusive control over the area. This is not a constructive possession case. This is an actual possession case. The defendant had the gun on his person and lost it when he tripped. So therefore, he doesn't have to have control over the stranger's backyard where he was in order to have proof of possession. It's not a constructive possession case. With respect to their claim under the Jackson case cited with respect to the error of closing argument, the claimed error of closing argument, in that case the prosecutor argued incorrectly that the defendant had told police that the defendant had found a gun in a car, which contradicted the evidence. So here, in Jackson, it was an affirmative misstatement of the facts. And here, that's different than making appeals to common sense and experience, which is more like the Runge case. And also, Hart allows evidence of the defendant's failure to respond to some questions, and therefore, that evidence can be properly commented on in closing argument. And there's no clear or obvious error with respect to the claim that the prosecutor improperly commented on the defendant's silence. With respect to mandatory minimum sentence, it's not a case like House with a life sentence. This is 15-year minimum. And especially this being raised for the first time on appeal, on the basis of science of juvenile development, there's no evidence. Like McKee points out, there's no evidence of that in the record before the circuit court. And instead, the defendant here actually admitted that the 15-year sentence was appropriate. So that's invited error, if it is error. But there's also no evidence of how that juvenile development science might apply to this defendant. So, under the McKee case, this is something that cannot be raised for the first time on appeal. The defendant, of course, could raise it in a post-commission petition if he wanted to try to pursue that. But that's not something this court should reach for the first time on appeal, because of the lack of a record for making an adequate record for considering it as applied constitutional challenge. With respect to the One Act, One Crime, the defendant's brief recognizes that Coates was pending for the Ellingston Court. I'm not sure if this court is aware that Coates has, in fact, been decided. So defense claims on the basis of, I think it was Brown and Williams, are not persuasive anymore. And this court should instead follow this decision in white. Possession of gun and drugs at the same time are distinct, even if simultaneous acts. And they do support different offenses. The defendant should enact. And so, the last thing I'd like to mention is about the drug treatment assessment. It was imposed at $2,000. And of course, the state's position is that it should have been $3,000. Now, we are not arguing that this court should or can raise the assessment, but simply pointing out the fact that this court should not reduce the assessment to $1,000 as the defendant requests. Well, was he convicted of a violation of the Illinois Controlled Substances Act, from which you derived the drug treatment assessment? Yes. I believe he got the. In terms of the Class X. Right, I understand. He was convicted of a Class II unlawful possession of controlled substances when delivered. Now, we understand that the judgment, I think, says Class I, and that could be changed on the MITMAS to Class II. Right, but you argue and you agree that it should have been a $3,000 assessment because he was convicted of a Class X offense. But that wasn't a Class X offense under the Controlled Substances Act, was it? Well, the statute actually is 411.2G, and it says if the person is convicted of more than one offense, it just says more than one offense, in a complaint, indictment, or information, the assessment shall be based on the highest class offense for which the person is convicted. Here, the highest class offense in which the person was convicted is Class X. But 411.2A says that every person convicted of a violation of this act shall be assessed, and then it gives the scale. So, doesn't it have to be a conviction under the Controlled Substances Act? Isn't that what we're looking at? Isn't that what we look to? Well, the State's position is that the intent of this, and especially the language, which refers to more than one offense in the indictment or information, it applies to all charges that he might be convicted to in that same indictment or information. And even if it were limited to offenses of that Section 411.2G, if that were limited to only offenses under the Controlled Substances Act, the predicate for the armed violence charge was a violation of the Controlled Substances Act. Therefore, the intent of the armed violence statute is to enhance the penalty for violations of other felonies. And here, the other felony was the predicate for armed violence was a violation of the Illinois Controlled Substances Act. So, the intent behind this drug treatment statute 411.2 should encompass a Class X felony where the defendant violates the Illinois Controlled Substances Act while armed with a firearm. It seems to me that argument would require that we ignore the very specific language that I just read to you, that it has to be a violation of the Controlled Substances Act, that that's what we look to, that particular conviction, in determining what the assessment should be. Right. And the State's position is that the defendant was in fact convicted of a violation of the Controlled Substances Act. And as I cited in my brief, he violated the Illinois Controlled Substances Act while unlawfully possessing cocaine while armed with a firearm. And I cited the statutes of the Illinois Criminal Code, which is 33A-2, 33A-3. And I also cited Section 402C of the Illinois Controlled Substances Act. This is like a hybrid crime. This is a violation of both the Criminal Code and the Illinois Controlled Substances Act. The fact that the defendant violates the Illinois Controlled Substances Act while armed with a firearm does not mean that he's no longer in violation of the Illinois Controlled Substances Act. What the armed with a firearm and the application of the armed violence statute raises the classification of the violation of the Illinois Controlled Substances Act to become a Class X crime. Where do we find the description and elements related to armed violence? It's in the Criminal Code, right? Yes, it's Section 33A. You make a good argument, but the technical literal terms suggest maybe this doesn't apply. And if there's some uncertainty about it, why wouldn't the rule of lenity apply and say, well, they talked about this act, and this really was because it was a conviction where he had a gun. It's now in the Criminal Code. So under the rule of lenity, we're just going to follow that. Well, first, there's no grievous ambiguity here, because this court simply recognizes that possessing cocaine unlawfully while armed with a firearm is a violation of the Illinois Controlled Substances Act, and the operation of the armed violence statute simply ups the penalty from a Class 4 felony to a Class X felony because it's a firearm. That's all the Criminal Code is necessary for. It does not solely become a violation of the Criminal Code of 2012. Well, as I said, that's a good argument, except we have the phrase that Justice Harris pointed to, a violation of this code, which is... Right. I understand. But the ambiguity is not whether a violation of the armed violence statute cannot be... Well, if we agree with you, what should we do? How about that as a thought, too? What happens to this case on appeal because of the whole fines and fees stuff? Well, this court cannot increase the penalty. I understand that. I'm not asking that. I'm simply asking this court to refuse the defendant's request, decline the defendant's request to reduce the penalty even further below the statutory minimum requirement is it has to be $3,000. He only got $2,000. So if it has to be $3,000, then this court should decline to reduce it even further because it should have been $3,000 in the first place. So this court would have to just leave it at $2,000 because it cannot increase it further. But I guess I'm trying to understand the idea of the lenity is there is no ambiguity as to whether this Class X felony, armed violence, is a violation of the Elementary Controlled Substances Act because that is the predicate felony. And just because the armed violence statute is in the criminal code doesn't divorce the fact that this is a violation of the Controlled Substances Act because it's unlawfully possessing cocaine. And that's the state's position for why it should be $3,000. But, of course, I understand it cannot be raised. So, therefore, we request this court to affirm. And thank you for your time. Okay. Thank you, Ms. Brooks. Mr. Castaneda, rebuttal argument? Your Honors, as to Issue 7, the fines and fees issue, there, as Your Honors correctly pointed out, the clear interpretation of the statute, every person convicted of a violation under this Act, even under the state's proposed interpretation of the statute, is not consistent with the plain language of the statute as there is no Class M fine included in the statute. So under that interpretation, if somebody was convicted under the Controlled Substances Act and a Class M felony, there would be no fine to impose on this person because there is no fine included under the statute. Even if that interpretation were correct, here the record clearly states that the court, when sentencing Taiwan, fined him $2,000 on Count 3. And Count 3 was a Class 2 felony, not a Class 1. And part of that makes up its probably because the state initially charged Taiwan under a Class 1 felony. But the evidence was insufficient to establish that he possessed 1 gram of cocaine or more. He actually possessed 0.7 grams. And that's where the mix-up came in. Even the state, during its closing arguments, or during its arguments during sentencing, argued $2,000 to fine Taiwan $2,000 for Count 3. And Count 3 specifically, a Class 2 offense, not a Class 1. And as for Issues 4, that as-applied constitutional challenges cannot be raised for the first time on appeal, the Illinois Supreme Court in People v. Holman in 2017 addressed for the first time on appeal an as-applied constitutional challenge that was raised there. So an as-applied constitutional challenge can be raised for the first time on appeal if the record is sufficient. And here we do have a record that's sufficient. We have a PSI. And we have Taiwan's age. He was 18 years old and 2 weeks at the time. And we have on record the judge lamenting that his hands were tied to this 15-year minimum. Shows the wisdom of the legislature requiring a mandatory minimum sentence, then, doesn't it? I'm sorry, Your Honor? It shows the wisdom of the legislature in requiring a mandatory minimum sentence under these circumstances, then, doesn't it? As applied to adults, Your Honor, not as applied to a youthful offender as Taiwan. The Iowa Supreme Court in State v. Lyle applying the logic of Miller, there was a 10-year. Say it again. They did what? Applying the logic of Miller in State v. Lyle in 2014, there was a 10-year mandatory minimum. And they found applying the simple logic in Miller where it states that youthful offenders, juveniles, but youthful offenders are categorically less culpable than adults, then. Did they define the term youthful offenders? Did that go into the early 20s in that case? No, Your Honor. Youthful offenders came more into play in the first district in People v. House. What does the term mean? I'm still looking for a definition. Youthful offender, Your Honor, is that they share the same traits as a juvenile. But they're not juveniles. But they're not juveniles under the law. But under the law, they do have a less culpable, a categorically less culpable. Do we know when that category no longer applies? The research cited in these cases in the President shows that it's at some time in their mid-20s. So a youthful offender could be in mid-20s? They share more qualities with college students, share more qualities with juveniles than they do with adults. So everyone's a victim in a youthful offender? No, Your Honor, but they should be, these Miller factors should be considering in sentencing these youthful offenders. And that is the point. Consider to the extent that if it's not considered adequately, it's a violation of the Constitution. So as long as the trial judge's discretion is not taken away by these mandatory minimums, they're allowed to use their discretion. So the mandatory minimum violates the Constitution? For a youthful offender, it does, Your Honor. Applying the logic of Miller, applying the logic of House, if they are categorically less culpable, then any mandatory minimum is categorically inappropriate, any mandatory minimum. Are we to say that the Miller-Roper-Graham decisions did not find those unconstitutional because of the length, because of the mandatory? So up to maybe 25? And how would some judge know in a given case whether this is a youthful offender at 23? How would the judge know that he is constitutionally required to disregard the mandatory minimum statute in a given case? The judge, as long as they can consider the age, they can consider the PSI. Well, I've given you a situation they can't. They have a 23-year-old subject to a mandatory minimum sentence. How would the judge know whether or not this is an appropriate case to deem that mandatory minimum sentence unconstitutional? Your Honor, I see that my time is up. Go ahead. I want to hear the answer. I think just as long as we rely on trial judges to use their discretion appropriately in any sentence. So it's a discretionary call whether the sentence to be imposed would be unconstitutional? As long as they're a youthful offender, yes, Your Honor. Thank you, Mr. Castaneda. Thank you both. The case will be taken under advisement and a written decision shall issue.